UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DANA GIBSON,
a/k/a GEE GIBSON,

                            Plaintiff,

    v.

ANDREW M. CUOMO, et al.,

                         Defendants.

_____

20-CV-1455-JLS-MJR


REPORT,
RECOMMENDATION
and ORDER


## INTRODUCTION

This case has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) by the Honorable John L. Sinatra, Jr. for all pre-trial matters, including preparation of a report and recommendation on dispositive motions. (Dkt. No. 29). Before the Court is Defendant Andrew M. Cuomo's motion to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 28). Also before this Court is Plaintiff Dana Gibson's motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure and Title 28, United States Code, Section 1927 (Dkt. No. 43), motion to amend or correct party name, (Dkt. No. 49), and motion to strike (Dkt. No. 49).

For the following reasons, this Court recommends that the District Court grant Defendant Cuomo's motion to dismiss. It is further recommended that the District Court

deny Plaintiff Gibson's motion for sanctions.[1] Lastly, it is ordered the Plaintiff Gibson's

motion to amend party name is granted and Plaintiff's motion to strike is denied.[2]

## BACKGROUND and PROCEDURAL HISTORY

*Pro se* Plaintiff Dana Gibson is a prisoner presently confined at Marcy Correctional

Facility. (Dkt. No. 10). Gibson filed this action under 42 U.S.C. § 1983 and alleged, among

other things, that Defendants, former New York Governor Andrew M. Cuomo and the New

York State Department of Corrections and Community Supervision ("DOCCS"), violated

the Eighth Amendment when they were indifferent, careless, reckless, and negligent in

failing to heed the advice, warnings, and guidance of the Centers for Disease Control

("CDC") and other governmental agencies in March and April 2020. (*Id.*, ¶¶ 12-18). And

that, as a result, Gibson contracted the novel coronavirus ("COVID-19"). (*Id.*). Gibson

alleged the exposure occurred while she was in DOCCS custody due to the lack of

protective measures, including face coverings or masks and social distancing. (*Id.*).

Gibson alleged several other constitutional violations arising from when she was confined

---

[1] Although Courts in this Circuit have found decisions on monetary sanctions under Rule 11 or 28 U.S.C. § 1927 to be within the authority of a Magistrate Judge, *see e.g. Forjone v. Leavitt*, 05-CV-395, 2008 U.S. Dist. LEXIS 35581, at *21-22 (W.D.N.Y. Apr. 30, 2008) (Rule 11); *Novelty Textile Mills, Inc. v. Stern*, 136 F.R.D. 63, 74-76 (S.D.N.Y. 1991) (§ 1927), the Second Circuit has expressed uncertainty as to the authority of Magistrate Judges to impose Rule 11 sanctions, *see Kiobel v. Millson*, 592 F. 3d 78, 79 (2d Cir. 2010); *Mei Ling Lin v. City of New York*, 14-CV-9994, 2016 U.S. Dist. LEXIS 163634, at *11 (S.D.N.Y. Nov. 28, 2016) ("it is unresolved in the Second Circuit whether such sanctions are non-dispositive, so as to make a magistrate judge's sanctions order subject to clear error review, or dispositive, such that the order would take the form of a report and recommendation"). As such, the Court approaches Petitioner's motion for sanctions under both provisions of the law with a report and recommendation.

[2] Plaintiff's motion to amend or correct party name simply seeks to amend her name from "Dana Gibson" to "Gee Gibson" in this action. (Dkt. No. 48). Plaintiff submits that her name has been legally changed to "Gee Gibson" and requests amendment of the case caption to reflect that change. (*Id.*). Although Plaintiff has not provided proof of a legal name change, Defendants have raised no opposition to the motion. Further, the Court takes judicial notice that Plaintiff's name is listed as "Gee A. Gibson" on the publicly available inmate information maintained by DOCCS for the entry corresponding to Plaintiff's Department ID Number ("DIN"). *See* https://nysdoccslookup.doccs.ny.gov/ (last visited Mar. 14, 2023). Accordingly, the Court finds it appropriate to grant this motion.

at Wende Correctional Facility, including mail interference and retaliation, use of excessive force, denial of medical care, and due process. (*Id.*, ¶¶ 19-32).

Relevant to this motion to dismiss, Plaintiff specifically alleged that on March 17, 2020 she was transported from the Auburn Correctional Facility to Wende Correctional Facility on a bus for four hours with numerous other prisoners without masking or proper ventilation. (Dkt. No. 10, ¶¶ 16-17). The guards escorting her also allegedly did not have masks or face coverings. (*Id.*). When asked about the lack of masks and social distancing, Plaintiff alleges that a DOCCS employee told her that "we don't have to do all that shit because neither Governor Cuomo, nor DOCCS require or permit such." (*Id.*). Plaintiff alleged that when she arrived at Wende in the afternoon of March 17 and was assigned to a unit, face masks or coverings were not permitted or required, and there was not an air filtration system to filter out COVID-19 "virus spores." (*Id.*). On the morning of March 18, 2020, Plaintiff began having breathing difficulty and was rushed to the prison infirmary, where she tested positive for COVID-19. (*Id.*, ¶¶ 17-18). On the next day, March 19, 2020, she was transported from the prison infirmary to the Erie County Medical Center for medical treatment and care of COVID-19 and related respiratory complications. (*Id.*). Plaintiff alleged that she was exposed to and contracted COVID-19 because of the Defendants' failure to implement policies and procedures despite purportedly being warned by the CDC about the dangers of COVID. (*Id.*, ¶¶ 13-14, 18). Based on these allegations, Plaintiff claims that Governor Cuomo and other Defendants violated her Eighth Amendment rights.

The District Court previously granted Plaintiff permission to proceed *in forma pauperis* and screened Plaintiff's Complaint and Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A. (Dkt. Nos. 5; 16). Through those decisions, the Court dismissed several of Plaintiff's claims, and allowed only the following claims to proceed to service: (1) Gibson's Eighth Amendment claims against Cuomo, Annucci, Graff, McKenzi, and Cochran related to Gibson's exposure to and contraction of COVID-19 (Dkt. No. 10, ¶¶ 12-18); (2) Gibson's First Amendment retaliation claim against Maddox (*Id.*, ¶¶ 19-21); (3) Gibson's excessive force, failure to intervene, and failure to treat injury claims against Prequeen, Szablicki, Price, Seay, Hunter, and Obertean (*Id.*, ¶¶ 22-24); and (4) Gibson's due process claims against Brown and McGuire (*Id.*, ¶¶ 25-32). Plaintiff seeks compensatory and punitive damages against the individual defendants. (Id., ¶ 33). Plaintiff also sought declaratory relief against DOCCS, but the District Court dismissed all claims against DOCCS and any other defendant, in his or her official capacity. (Dkt. No. 16).

On June 11, 2022, Defendant Cuomo filed the instant motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted. (Dkt. No. 28). Plaintiff filed a response in opposition to the motion. (Dkt. No. 37). Defendant filed a reply. (Dkt. No. 41). At that time, the Court considered the matter submitted for report and recommendation. Subsequently, Plaintiff moved to strike Defendant Cuomo's reply memorandum. (Dkt. No. 49). Defendant Cuomo opposed the request to strike (Dkt. No. 50), and filed an amended reply memorandum (Dkt. No. 51).

On August 11, 2022, Plaintiff filed a motion for sanctions against Defendant Cuomo's counsel, Rita M. Glavin, Esq., and Pamela A. Nichols, Esq., pursuant to 28

U.S.C. § 1927 and Rule 11 of the Federal Rules of Civil Procedure. (Dkt. No. 43). Counsel for Defendant Cuomo filed a response in opposition to the motion. (Dkt. No. 46). Plaintiff filed a reply. (Dkt. No. 52).

On August 31, 2022, Plaintiff filed a motion to amend or correct party name. (Dkt. No. 48). Defendants have not opposed that request.

In the interim, defendants Annucci, Balloni, Cochran, Graff, and McKenzie have filed a motion to dismiss (Dkt. No. 61), and defendants Brown, Hunter, Maddox, McGuire, Obertean, Pequeen, Price, Seay, and Szablicki have filed a separate motion to dismiss and/or motion to sever (Dkt. No. 67). Each of those motions is awaiting briefing by the parties and will be addressed by separate decision/report and recommendation.

## DISCUSSION

Defendant Cuomo moves to dismiss Plaintiff's Eighth Amendment claim against him on the grounds that: (1) Plaintiff's claim of deliberate indifference fails as a matter of law; (2) Plaintiff's claim does not allege personal involvement by Governor Cuomo; (3) Governor Cuomo is entitled to qualified immunity; and (4) Plaintiff has not exhausted her administrative remedies. The motion to dismiss, as well as Plaintiff's related motion for sanctions and motion to strike, are discussed below.

### *Motion to Dismiss*

A defendant may move to dismiss a complaint on the ground that it fails to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To state a claim on which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). In reviewing a complaint in the context of a motion to dismiss pursuant to Fed. R.

Civ. P. 12(b)(6), the court must accept as true all factual allegations and draw all reasonable inferences from those allegations in favor of the plaintiff. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Specifically, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Supreme Court has further instructed that "[d]etermining whether a complaint states a plausible claim for relief [...] requires the [...] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

Where, as here, the plaintiff is proceeding *pro se*, the complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'") (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). That said, even a *pro se* complaint must be dismissed if it does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

"In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). On a Rule 12(b)(b) motion, the Court may take judicial notice of "items in the public record," *Richardson v. New York City Bd. of Educ.*, 711 Fed. Appx. 11, 13-14 (2d Cir. 2017), including documents "promulgated by or binding on a government agency," documents retrieved from official government websites, and other relevant matters of public record, *see James v. Annucci*, 6:20-CV-6952, 2021 U.S. Dist. LEXIS 144432, at *16-18 (W.D.N.Y. Aug. 3, 2021). Here, Defendant Cuomo refers to several sources of information outside the complaint, including official reports and information from DOCCS' website, executive orders of the New York State and Federal government, and public news articles. The Court finds it proper to take judicial notice of these records, as referenced below.

a. *Failure to State a Claim*

It is well settled that the treatment a prisoner receives in prison and the conditions under which he or she is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). In order to assert an Eighth Amendment claim regarding conditions of confinement, a plaintiff must establish that the defendant acted with "deliberate indifference to a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Similarly, a claim of inadequate medical care requires that a plaintiff prove "deliberate indifference to [his or her] serious medical needs." *See Estelle v. Gamble*, 429 U.S. at 104. Thus, to state a cognizable section 1983 claim, the

prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996).

The deliberate indifference standard embodies both an objective and a subjective prong. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Id.* (citation omitted); *see Hayes*, 84 F.3d at 620 ("plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm"). "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (citation omitted). Second, the charged official must act with a sufficiently culpable state of mind. *Hathaway*, 37 F.3d at 66 (citation omitted). Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. *Id.* More specifically, a prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* In other words, the standard requires "deliberate infliction of punishment," and is not satisfied by negligent "lack of due care for prisoner interests or safety." *Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019) (quoting *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)).

The Second Circuit has observed that "correctional officers have an affirmative obligation to protect inmates from infectious disease." *Jolly v. Coughlin*, 76 F.3d 468, 477

(2d Cir 1996). Further, courts have determined that "an inmate can face a substantial risk of serious harm in prison from COVID-19 if a prison does not take adequate measure to counter the spread of the virus." *Chunn v. Edge*, 465 F. Supp. 3d 168, 200 (E.D.N.Y. 2020). "[W]hether a particular danger poses a substantial risk of serious harm in a prison must be evaluated in light of the steps that the facility has already taken to mitigate the danger." *Id.* (citing *Helling*, 509 U.S. at 35-36).

Thus, the assessment of harm must be viewed based on the reasonableness of the actions of prison officials, which is particularly complicated in the context of the novel coronavirus pandemic. Plaintiff's allegations stem from events occurring between March 17, and March 19, 2020. During that time, she alleges that she was exposed to and contracted COVID-19 because defendants failed to implement adequate policies and procedures despite purportedly being warned by the CDC about the dangers of the disease.

The timing of Plaintiff's COVID-19 infection represents the very early days of the COVID-19 pandemic in United States. Plaintiff's exposure occurred only four days after President Trump's declaration of a national emergency on March 13, 2020, and it predates Governor Cuomo's issuance, on March 20, 2020, of the "New York State on PAUSE" Executive Order which directed uniform statewide safety measures.[3] Nonetheless, the Court takes judicial notice of evidence submitted by Defendant reflecting

---

[3] *See Letter from President Donald J. Trump on Emergency Determination under the Stafford* Act, 2020 WL 1243289 (Mar. 13, 2020); *Exec. Order No. 202.8* (Mar. 20, 2020); *Governor Cuomo Signs the 'New York State on PAUSE' Executive Order*, https://www.governor.ny.gov/news/governor-cuomo-signs-new-york-state-pause-executive-order (last visited Mar. 14, 2023); *see also Deer Mountain Inn LLC v. Union Ins. Co.*, 541 F. Supp. 3d 235, 239 (N.D.N.Y. 2021), *aff'd* 2022 U.S. App. LEXIS 5355 (2d Cir. Mar 1, 2021) (finding that on a motion to dismiss, "[t]he Court may take judicial notice of the New York Closure Order and accompanying guidance issued by the New York Governor's office.").

that DOCCS instituted numerous policies intended to prevent spread and infection of COVID-19 among prisoners soon after that time. Notably, the DOCCS website states that its mask policy was implemented on April 9, 2020. *See DOCCS Covid-19 Report*, Dep't of Corrections and Community Supervision, https://doccs.ny.gov/doccs-covid-19-report, (last visited Mar. 14, 2023); *see also James v. Annucci*, 2021 U.S. Dist. LEXIS 144432, at *22 ("DOCCS enacted procedures to address the Covid-19 outbreak inside New York's prisons at least as early as April 2020").

Plaintiff appears to have been among the first inmates infected with COVID-19 at Wende Correctional Facility, a fact which she acknowledges in her complaint by reference to a guard's comment that she "brought the coronavirus [there]." (Dkt. No. 10, ¶ 23). This fact is verified by news reports reflecting that only two inmates at Wende had tested positive for COVID-19 as of March 22, 2020.[4] In April 2020, several weeks after Plaintiff contracted the virus, Wende Correctional Facility had only twenty-six recorded cases of COVID-19 among incarcerated individuals, and no recorded fatalities.[5]

Although Plaintiff alleges that incarcerated people are likely to be more vulnerable to coronavirus disease outbreak because they live together closely for prolonged periods of time, (Dkt. No. 37, pg. 18), Plaintiff has not alleged that there was a known outbreak of

---

[4] *See* Troy Licastro, *Two Inmates at Wende Correctional Facility Test Positive for COVID-19*, WIVB, Mar. 22, 2020, https://www.wivb.com/news/local-news/erie-county/two-inmates-at-wende-correctional-facility-test-positive-for-covid-19/ (last visited Mar. 14, 2023); Daniel A. Gross, *"It Spreads Like Wildfire": The Coronavirus Comes to New York's Prisons*, The New Yorker, Mar. 24, 2020, https://www.newyorker.com/news/news-desk/it-spreads-like-wildfire-covid-19-comes-to-new-yorks-prisons (last visited Mar. 14, 2023).

[5] *See NYS DOCCS Incarcerated Individuals COVID-19 Report by Housing Facility as of April 27, 2020 at 3:00 PM*, DOCCS (Apr. 27, 2020), https://doccs.ny.gov/system/files/documents/2020/04/doccs-covid-19-confirmed-incarcerated-population-by-facility-april-27-2020.pdf (last visited Mar. 14, 2023).

COVID-19 within either facility on or before March 17, 2020, nor that she faced a greater risk from the disease in the custody of DOCCS, rather than outside of that custody. Indeed, "[i]t is hard to say that prisoners are exposed to a risk that is not one that today's society chooses to tolerate, or a risk so grave that it violates contemporary standards of decency, if the risk inside the facility is no greater than – and perhaps less than – the risk outside of it." *Chunn*, 465 F. Supp. 3d at 201 (citing *Helling*, 509 U.S. at 36); *see Harper v. Cuomo*, 9:21-CV-19, 2021 U.S. Dist. LEXIS 39173, at *25 (E.D.N.Y. Mar. 1, 2021) (finding that conditions of confinement were not likely to have created "substantial risk of serious harm" where plaintiffs had not made a showing that those within the facility faced a higher risk of infection than those outside of it). However, "conditions posing an elevated chance of exposure to an infectious disease can pose a substantial risk of serious harm." *Chunn*, 465 F. Supp. 3d at 200. In fact, some courts have found that the planning and response of officials to the potential or early outbreak of COVID-19 in correctional facilities did create substantial risk of serious harm to inmates under certain circumstances. *See Fernandez-Rodriguez v. Licon-Vitale*, 470 F. Supp. 3d 323, 349-50 (S.D.N.Y. July 2, 2020) (collecting cases) ("Many courts have found that prisons exposed to the novel coronavirus present conditions that meet the objective prong of the constitutional analysis."); *see also Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) ("The transmissibility of the COVID-19 virus in conjunction with [the facility's] dormitory-style housing—which places inmates within feet of each other—and the medically-vulnerable subclass's health risks, presents a substantial risk that petitioners at [the facility] will be infected with COVID-19 and have serious health effects as a result [...]."); *Caraballo v. Dep't of Corr. City of New York*, 22-CV-971, 2022 U.S. Dist. LEXIS 197962, at *10

(S.D.N.Y. Oct. 31, 2022) ("under certain circumstances, an inmate's exposure to COVID-19 could 'pose an unreasonable risk of serious damage to his health,' thereby satisfying the objective prong."). Thus, although the Court is doubtful that Plaintiff would be able to prove the objective prong, it cannot say, as a matter of law, that the conditions of confinement did not create a substantial risk of serious harm.

Regardless of this Court's conclusion on the objective component, Plaintiff's claim fails because she has not plausibly alleged that Governor Cuomo was deliberately indifferent to her situation. To fulfill the subjective element of deliberate indifference, Plaintiff must show that the official in question "made errors with a mental state equivalent to criminal recklessness, 'know[ing] of and disregard[ing] an excessive risk to inmate safety or health.'" *Harper*, 2021 U.S. Dist. LEXIS 39173, at \*27-28. Plaintiff has not offered facts sufficient to show this mental state for Governor Cuomo. To meet this standard, Plaintiff would need to allege that Governor Cuomo was actually aware of specific conditions at Wende Correctional Facility that increased the likelihood of COVID-19 exposure, and that he consciously disregarded that risk. She has not done so. Instead, her factual allegations about the lack of protective or safety measures suggest, at most, negligence on the part of prison officials, which does not constitute deliberate indifference. Indeed, "it is far more likely that officials have made negligent errors in implementing complex guidelines during a novel crisis than that they have knowingly disregarded an excessive risk of serious harm." *Chunn*, 465 F. Supp. 3d at 204; see *Harper*, 2021 U.S. Dist. LEXIS 39173, at \*31-34 (negligent errors in implementing policies to address evolving information about COVID-19 does not show knowing disregard of serious harm); *see also Burrell v. Annucci*, 9:22-CV-7014, 2022 U.S. Dist. LEXIS 178301, at \*15-16

(N.D.N.Y. Sept. 30, 2022) (collecting cases) ("with respect to prisoner claims involving COVID-19, the allegation that defendants disregarded public policy, the violation of a state rule, regulation, or statute does not, on its own, give rise to a constitutional claim").

Further, even if Plaintiff could show that mitigation measures for prisons were recommended by the CDC or another organization prior to the time of her exposure and that those specific safety measures were not implemented or adhered to, such guidance does not set Eighth Amendment standards. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 543 n. 27 (1979) (guidance or recommendations of outside organizations "simply do not establish the constitutional minima" and "are not determinative of the requirements of the Constitution."); *Gros v. Lafourche Parish*, No. 21-1783, 2022 U.S. Dist. LEXIS 29570, at *10-11 (E.D. La. Jan 12, 2022) ("the Constitution does not require prison officials to adopt the CDC guidelines or implement those guidelines to satisfy their duty to provide for inmate safety and care within prisons.") (citing *Valentine v. Collier*, 978 F.3d 154, 164 (5th Cir. 2020)). Although it may be argued that countermeasures could have been instituted differently or more quickly than they were, Plaintiff has not shown that officials deliberately disregarded the risks posed by the virus. "Shortfalls in the immediate implementation of guidelines this complex and resource-intensive do not suggest knowing disregard of a substantial risk of harm, rather than negligent error." *Chunn*, 465 F. Supp. 3d at 204-05. *See also Plata v. Newsom*, 445 F. Supp. 3d 557, 568 (N.D. Cal. 2020) ("No one questions the magnitude of the challenge that COVID-19 presents in a prison setting, and if the Court were in the Governor's or Secretary's position, it may adopt additional or different measures. But the question before the Court is not what it thinks is the best possible solution. Rather, the question is whether Defendants' actions to date are reasonable.").

It is also clear from Plaintiff's complaint that she received adequate medical treatment immediately after contracting the virus. Her complaint alleges that upon developing symptoms of COVID-19, she was "rushed" to the prison infirmary for testing and taken to the Erie County Medical Center for treatment the next morning. (Dkt. No. 10, ¶¶ 17-18). These facts further contradict Plaintiff's allegations of deliberate indifference. See LaPierre v. Dzurenda, 21-CV-0464, 2021 U.S. Dist. LEXIS 50853, at *21 (E.D.N.Y. Mar. 17, 2021) (finding that the fact that inmate was isolated after he experienced symptoms suggests that correctional facility implemented reasonable safety measures in response to COVID-19).

Moreover, even if Plaintiff had plausibly alleged that a constitutional violation occurred, she has failed to plead sufficient facts to show Governor Cuomo's personal involvement in such conduct. Personal involvement of a defendant in an alleged constitutional deprivation is a prerequisite to liability under § 1983, and lack thereof is grounds for dismissal. See Victory v. Pataki, 814 F.3d 47, 67 (2d Cir. 2016) ("A defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority. Rather, the personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). The Second Circuit has held that "personal involvement" under § 1983 means "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). In Tangreti v. Bachmann, the Second Circuit made clear that there is no special rule for supervisory liability in § 1983 actions. See 983 F.3d 609, 618-19 (2d Cir. 2016). "Instead,

a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Under *Tangreti*, a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred. *Id.*, at 617 n.4.

Plaintiff alleges that the prison facilities in question are "owned, regulated, and operated" by Governor Cuomo and DOCCS, and that Governor Cuomo and DOCCS officials had been warned by the CDC of the severity and consequences of the COVID-19 pandemic. (*Id.*, ¶¶ 12-15). She also alleges that prison officials who were not wearing face masks or other personal protective equipment were doing so based on the actions or inactions of Governor Cuomo. However, apart from a hearsay statement about Governor Cuomo not allowing masks, which Plaintiff attributes to a DOCCS employee, Plaintiff provides no specific facts regarding Governor Cuomo's personal involvement. She has not made factual allegations that Governor Cuomo participated in a decision to act in a manner that was contrary to CDC guidance, nor that he caused or directed the actions of the involved corrections officers. She has not alleged facts showing that Governor Cuomo knew of her symptoms, exposure, or medical treatment. *Compare Busch v. Cnty. of Erie*, 20-CV-1515, 2022 U.S. Dist. LEXIS 83539, at *12-14 (W.D.N.Y. May 6, 2022) (denying motion to dismiss where each individual defendant "knew there was a Hepatitis A outbreak, was personally involved in Plaintiff's treatment and care, knew Plaintiff was experiencing severe symptoms consistent with Hepatitis A," and was involved in course or treatment), *with Gilhooly v. Quiros*, 3:21-CV-140, 2022 U.S. Dist. LEXIS 14768, at *1921 (D. Conn. Jan. 27, 2022) (dismissing Eighth Amendment claims

where DOCCS defendants were not aware of plaintiff's medical condition or directly involved with allegedly unsafe conditions of the prison). Plaintiff also has failed to make factual allegations that Governor Cuomo had any ownership interest in any correctional facilities, nor that he, as opposed to the New York Legislature, was responsible for promulgating laws or regulations governing the behavior of DOCCS.

In fact, it is common for Courts in the Second Circuit to dismiss claims against governors and other high-ranking state officials for alleged constitutional violations where plaintiffs are unable to show personal involvement. *See, e.g. Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989) (dismissing claim against Governor Rockefeller, even where he had ratified DOCCS Commissioner's decision to retake prison by force after riot); *James v. Goord*, 03-CV-0868, 2001 WL 34552046 (W.D.N.Y. Feb. 10, 2001) (dismissing claim against Governor Pataki because claim that he ignored a prisoner's letter protesting unconstitutional conduct was not sufficient to allege personal involvement). The same conclusion has been reached in the context of COVID-19 claims. *See, e.g., Tripathy v. Schneider*, 21-CV-6392, 2021 U.S. Dist. LEXIS 189763, at *8-9 (W.D.N.Y. Oct. 1, 2021) (finding that Eighth Amendment claim against Governor Cuomo and DOCCS Commissioner for their alleged failure to implement or enforce safety protocols to control the spread of COVID-19 must be dismissed based on lack of personal involvement); *Breton v. Lamont*, 3:21-CV-719, 2021 U.S. Dist. LEXIS 158615, at *12 (D. Conn. Aug. 23, 2021) (dismissing Eighth Amendment conditions of confinement claim against Connecticut Governor for lack of personal involvement).

A governor cannot be held liable based solely on holding a high position of authority. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Further, Plaintiff's

16

allegation that the correctional officers were "acting under the auspices" of Governor Cuomo is little more than an allegation of supervisory authority, which is insufficient to create liability. *See Tangreti*, 983 F.3d at 618. In the absence of factual allegations of Governor Cuomo's personal involvement, Plaintiff's claim against him must be dismissed. *See James v. Annucci*, 2021 U.S. Dist. LEXIS 144432, at *23 (holding that "even assuming that the Complaint otherwise adequately stated an Eighth Amendment claim generally, which the Court doubts given the novelty of the situation and [the] rapidly-evolving state of medical knowledge concerning Covid-19," prisoner's claim against prison superintendent fails in the absence of allegations of personal involvement).

Accordingly, the Court recommends that Defendant's motion to dismiss be granted.

b. *Qualified Immunity*

The Court further finds that Governor Cuomo is entitled to qualified immunity in connection with this claim. The doctrine of qualified immunity protects government officials from suit if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The issues on qualified immunity are: (1) whether plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that right was "clearly established"; and (3) even if the right was "clearly established," whether it was "objectively reasonable" for the officer to believe the conduct at issue was lawful. *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013).

To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In this way, qualified immunity shields official conduct that is "objectively reasonable in light of the legal rules that were clearly established at the time it was taken." *Gonzalez*, 728 F.3d at 154 (quoting *X-Men Sec., Inc., v. Pataki*, 196 F.3d 56, 66 (2d Cir. 1999)). Courts must consider: "whether (1) [the right] was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of that right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011). Such a determination must be viewed in light of the specific context of the case, not a broad general proposition. *Id.*

Here, Governor Cuomo is entitled to qualified immunity because Plaintiff has not alleged facts showing to show that a constitutional violation occurred. Moreover, even if she had, she cannot show that she had a "clearly established" right that was violated by her conditions of confinement. While the "clearly established" standard does not necessarily require a controlling decision on point, it does require that either "'controlling authority' or 'a robust consensus of case of persuasive authority' dictate the action at issue." *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 186 (2d Cir. 2020) (citations omitted). If such precedent does not exist, "the right at issue was not clearly established […] [and] qualified immunity shields the defendant." *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007). Plaintiff provides no Second Circuit or other authority addressing the question of whether Eighth Amendment rights are violated by prison conditions that failed to provide specific protections against contracting COVID-19. Indeed, it would be

very difficult to demonstrate that any such right was clearly established at the very outset of the pandemic. *See People ex rel. Carroll v. Keyser*, 184 A.D.3d 189, 195-96 (3d Dep't 2020) (finding no Eighth Amendment violation where "officials at DOCCS, like many other officials at all levels of government, failed to initially grasp the severity of the COVID-19 threat or the best methods of addressing it, and that they are now adapting to the situation."). Thus, Plaintiff has not shown that a reasonable person in Governor Cuomo's position would have known that he had a constitutional duty to implement certain COVID-related policies and procedures in state penitentiaries. Because Plaintiff has not plausibly alleged that Governor Cuomo violated a clearly established right, he is entitled to qualified immunity. Furthermore, a defendant is entitled to qualified immunity if a plaintiff fails to plead sufficient facts to show that the defendant was personally involved in a constitutional violation. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 135-36 (2d Cir. 2013). Here, for the reasons discussed above, Plaintiff has not plausibly alleged that Governor Cuomo acted with deliberate indifference and was personally involved in a constitutional violation.

Thus, for this alternative reason, the Court recommends that Defendant's motion to dismiss be granted.

c.  *Exhaustion of Administrative Remedies*

Defendant next argues Plaintiff's claims against him must be dismissed because Plaintiff has failed to exhaust her administrative remedies. The Court rejects this argument.

Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." There is no question that exhaustion is mandatory under the Prison Litigation Reform Act ("PLRA") and that unexhausted claims cannot be brought to court. *Jones v. Bock*, 549 U.S. 199, 211 (2007). Nonetheless, the Supreme Court clarified in *Jones* that "failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citing *Jones*, 549 U.S. at 216). Accordingly, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.*

However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement. *Id.* In other words, although a complaint cannot be dismissed for failing to plead that administrative remedies were exhausted, it *can* be dismissed if it pleads facts demonstrating that administrative remedies were *not* exhausted. *Garvin v. Rivera*, 13-CV-7054, 2015 U.S. Dist. LEXIS 24616, at *6 (S.D.N.Y. Feb. 28, 2015) (emphasis in original). Further, there is the "significant qualifier" to exhaustion requirements that administrative remedies must actually be available to the aggrieved prisoner. *See Ross v. Blake*, 578 U.S. 632, 639-42 (2016).

Here, Plaintiff's complaint references a prison grievance complaint only in connection with her First Amendment claim of mail interference. Defendant Cuomo argues that there is no evidence that proper grievance procedures were followed within the appropriate time frame and that no exception was applicable to Plaintiff. In her

response to this motion to dismiss, Plaintiff makes additional allegations about her pursuit of grievance procedures. (Dkt. No. 37, pgs. 10-13). From these facts Defendant now argues that Plaintiff's alleged filing of a grievance on May 29, 2020 in connection with her exposure to COVID-19 was untimely under the applicable regulations. Neither Plaintiff's complaint, nor the additional factual allegations (which are not properly before the Court), definitively establish that Plaintiff failed to exhaust her administrative remedies in connection with her Eighth Amendment claim. Plaintiff is not required to plead or prove exhaustion in her complaint and her failure to do so is not grounds for dismissal at this stage. *See Dozier v. Genesee Cty.*, 6:20-CV-6628, 2022 U.S. Dist. LEXIS 3697, at *12 (W.D.N.Y. Jan. 7, 2022) ("[t]he only circumstance in which it is appropriate to dismiss a complaint on nonexhaustion grounds is when it is apparent from the face of the complaint that the plaintiff failed to exhaust his administrative remedies); *Genao v. City of New York*, 20-CV-2441, 2021 U.S. Dist. LEXIS 98752, at *6 (S.D.N.Y. May 25, 2021) ("Although failure to exhaust administrative remedies would bar Plaintiff from bringing this claim before this Court, Plaintiff's failure to plead administrative exhaustion does not."); *accord Jones*, 549 U.S. at 216; *Williams*, 829 F.3d at 122.

Plaintiff's case cannot be dismissed based on the absence of exhaustion allegations and, from the face of the amended complaint, the Court cannot conclude whether mandatory exhaustion did or did not occur, or if exhaustion was otherwise excusable. *See Jones v. Sposato*, 16-CV-5121, 2017 U.S. Dist. LEXIS 135439, at *16 (E.D.N.Y. Aug. 22, 2017) (denying motion to dismiss because it was not clear from the face of the complaint that plaintiff's failure to exhaust could not be excused as unavailable).

d. _Motion to Strike Defendant Cuomo's Reply_

Plaintiff moves to strike Defendant Cuomo's August 2, 2022 reply memorandum pursuant to Fed. R. Civ. P. 11(a) on the basis that the memorandum failed to include a signature by Defendant's counsel. (Dkt. No. 49). A review of the reply memorandum (Dkt. No. 41) shows a signature block for counsel Rita M. Glavin, Esq. and Pamela A. Nichols, Esq., including their typed names and an "s/" notation, which is a generally acceptable form of electronic signature in this District. _See_ Fed. R. Civ. P. 5 ("[a] filing made through a person's electronic-filing account and authorized by that person, together with that person's name on a signature block, constitutes the person's signature"); United States District Court, Western District of New York, _Administrative Procedures Guide for Electronic Filing_, at pg. 10 (Oct. 2022), https://www.nywd.uscourts.gov/sites/nywd/files/administrative%20guide%202021.pdf ("The username and password required to file documents on the Electronic Filing System serve as the filing user's signature on all electronic documents filed with this Court for purposes of the Federal Rules of Civil Procedure (including Rule 11) [...].") The docket in this action reflects that the filing was made by Ms. Glavin through her PACER account. (Dkt. No. 41). Further, in response to Plaintiff's motion, defense counsel promptly filed an amended reply memorandum (Dkt. No. 51) which included the handwritten signature of Ms. Glavin, thus mooting this motion.

Accordingly, the Court denies Plaintiff's motion to strike Defendant's Cuomo's reply memorandum. _See Myers v. Dolac_, 09-CV-6642, 2013 U.S. Dist. LEXIS 130677, at *5 n.4 (W.D.N.Y. Sept. 12, 2013) (denying motion to strike on Rule 11(a) grounds because

the submission contained the electronic signature of at least one attorney of record in compliance with the Administrative Procedures Guide for this District).

### *Motion for Sanctions*

Plaintiff moves for the imposition of monetary sanctions against Defendant Cuomo's counsel, Rita M. Glavin, Esq. and Pamela A. Nichols, Esq., pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927. (Dkt. No. 43). Plaintiff asserts that arguments made by defense counsel within Defendant's motion to dismiss were "willful actions to advance a baseless statement and argument […] in an attempt to fraudulently ascertain a dismissal of this action on behalf of defendant Cuomo." (*Id.*, pg. 6). Specifically, Plaintiff states that defense counsel made false and frivolous arguments regarding her exhaustion of administrative remedies without inquiry or evidentiary proof. (*Id.*, pgs. 7-8). She submits that these arguments were advanced only to delay the progress of litigation and were intended to mislead or deceive the Court. (*Id.*).

Rule 11(b) of the Federal Rules of Civil Procedure sets out requirements for attorneys and unrepresented parties in making representations to the Court. It provides that "[b]y presenting to the court a pleading, written motion, or other paper […] an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Rule 11(c)(1) further provides that, "[i]f after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that has violated the rule or is responsible for the violation."

The standard for triggering the award of fees under Rule 11 is "objective unreasonableness," *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000). It is not based on the subjective beliefs of the person making the statement. *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003). "A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Parnoff v. Fireman's Fund Ins. Co.*, 796 Fed. Appx. 6, 8 (2d Cir. 2019) (summary order) (citation omitted). With respect to factual contentions, "sanctions may not be imposed unless a particular allegation is utterly lacking in support." *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) (citing *Storey*, 347 F.3d at 388). Rule 11 requires that the conduct be objectively unreasonable and does not require a finding of subjective bad faith. *Parnoff,* 796 Fed. Appx. at 8. Even where there has been a Rule 11 violation, the decision of whether or not to impose sanctions as a result of the violation is discretionary rather than mandatory.

*See* Fed. R. Civ. P. 11(c)(1) ("the court may impose an appropriate sanction"); *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994).

Title 28 U.S.C. Section 1927 provides that a court may impose costs against counsel who "multiples the proceedings in any case unreasonably and vexatiously." Unlike Rule 11, where the standard for trigging the award of fees is objective unreasonableness, Section 1927 requires a "clear showing of bad faith." *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1010 (2d Cir. 1986). The purpose of § 1927 is to "deter unnecessary delays in litigation" and courts have indicated that a showing of "bad faith to willfully abuse the judicial process" is necessary to assess any fees against counsel. *Avent v. Solfaro*, 223 F.R.D. 184, 188 (S.D.N.Y. 2004).

Here, defense counsel submits that the exhaustion arguments contained in their motion to dismiss were: (1) not false, baseless, or frivolous, (2) not made without proper investigation, and (3) not made with an improper purpose. (Dkt. No. 46). Counsel further submits that there is no evidence of bad faith or indication that they unreasonably or vexatiously caused delay or multiplied the proceedings. (*Id.*).[6]

Although the Court disagreed with Defendant Cuomo's argument and declined to grant dismissal on the basis of administrative non-exhaustion, counsel for Defendant Cuomo made reasonable and non-frivolous arguments on this issue. Those arguments included citations to applicable law holding that dismissal of a complaint on non-exhaustion grounds is possible, but only appropriate in limited circumstances. *See Dozier*, *supra*. Further, Defendant's arguments were reasonably based on a complaint which

---

[6] Defense counsel also argues that Plaintiff's Rule 11 motion is procedurally improper. (Dkt. No. 46, pgs. 12-14). In light of Plaintiff's *pro se* status, the Court elects to address this motion on the merits.

discussed a prison grievance complaint, but not in reference to the Eighth Amendment claim against him. It was not unreasonable for Defendant to challenge the exhaustion requirement based on the face of the complaint. Defendant provided legal and factual support of this argument.[7] Therefore, it cannot be said that the motion was frivolous, baseless, or "utterly lacking in support." *See Ahmed v. Compass Grp.*, 99-CV-10032, 2000 U.S. Dist. LEXIS 10789, at *22-23 (S.D.N.Y. Aug. 3, 2000) (denying Rule 11 motion for sanctions where defendants who moved to dismiss the action did so in reliance on recent decisions from district courts in the Second Circuit and even cited a recent opinion to the contrary).

Further, there is no evidence of bad faith or improper purpose. Defendant is entitled to vigorously defend himself in this case and his inclusion of the administrative non-exhaustion argument was properly grounded among several other nonfrivolous arguments made in support of his motion to dismiss. It cannot be said that one such argument, even if later found to be without merit, created a false or vexatious motion. Nor does the Court find that the inclusion of this argument delayed or multiplied these proceedings. Thus, the Court concludes that neither defendant Cuomo, nor his counsel, acted in a manner which justifies the imposition of sanctions under Rule 11 or liability for excess costs under § 1927.

Accordingly, the Court recommends that Plaintiff's motion for sanctions be denied.

---

[7] Although Plaintiff argues that Defendant did not perform a proper investigation into whether a grievance was in DOCCS records, the relevance of factual investigation is very limited in a motion to dismiss. A motion to dismiss tests only the legal sufficiency of a complaint and does not allow discovery to test the factual accuracy of a complaint's allegations. *See Greene v. Emersons, Ltd.*, 86 F.R.D. 66, 73 (S.D.N.Y. 1980) ("A defendant has the right, under Rule 12(b), to challenge the legal sufficiency of the complaint's allegations against him without first subjecting himself to discovery procedures."). Indeed, on a motion to dismiss, the Court is generally restricted from considering evidence from outside the pleadings.

## CONCLUSION

For the foregoing reasons, it is recommended to the District Court that Defendant Cuomo's motion to dismiss (Dkt. No. 28) be granted, and Plaintiff's motion for sanctions (Dkt. No. 43) be denied.

It is hereby **ORDERED** that Plaintiff's motion to amend or correct party name (Dkt. No. 48) is granted. **The Clerk of Court is directed to amend the caption of this case to reflect Plaintiff's name as "Gee Gibson."**

Further, it is hereby **ORDERED** that Plaintiff's motion to strike (Dkt. No. 49) is denied.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72.  Any requests for an extension of this deadline must be made to Judge Sinatra.

*Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the

Magistrate Judge in the first instance. *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).*

Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

SO ORDERED.

DATED:   March 24, 2023
         Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge