UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GEE GIBSON,
f/k/a DANA GIBSON,

                       Plaintiff,

v.

ANDREW M. CUOMO, et al.,

                       Defendants.

20-CV-1455-JLS-MJR

REPORT and
RECOMMENDATION

---

## INTRODUCTION

This case has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) by the Honorable John L. Sinatra, Jr. for all pre-trial matters, including preparation of a report and recommendation on dispositive motions. (Dkt. No. 29). Before the Court are two motions to dismiss brought by Defendants Annucci, Balloni, Cochran, Graff, and McKenzie (Dkt. No. 61) and Defendant Maddox (Dkt. No. 67) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants Maddox, Obertean, Hunter, Pequeen, Szarlicki, Price, Seay, Brown, and McGuire also seek dismissal without prejudice or severance of Plaintiff's claims pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure. (Dkt. No. 67).

For the following reasons, this Court recommends that the District Court grant both motions to dismiss and deny the motion for severance as moot.

## BACKGROUND and PROCEDURAL HISTORY

*Pro se* Plaintiff Gee Gibson is a prisoner presently confined at Marcy Correctional Facility. (Dkt. No. 10). Gibson filed this action under 42 U.S.C. § 1983 and alleged, among

other things, that Defendants, former New York Governor Andrew M. Cuomo and the New York State Department of Corrections and Community Supervision ("DOCCS"), violated the Eighth Amendment when they were indifferent, careless, reckless, and negligent in failing to heed the advice, warnings, and guidance of the Centers for Disease Control ("CDC") and other governmental agencies in March and April 2020. (*Id.*, ¶¶ 12-18). And that, as a result, Gibson contracted the novel coronavirus ("COVID-19"). (*Id.*). Gibson alleged the exposure occurred while she was in DOCCS custody due to the lack of protective measures, including face coverings or masks and social distancing. (*Id.*). Gibson alleged several other constitutional violations arising from when she was confined at Wende Correctional Facility, including mail interference and retaliation, use of excessive force, denial of medical care, and denial of due process. (*Id.*, ¶¶ 19-32).

The District Court previously granted Plaintiff permission to proceed *in forma pauperis* and screened Plaintiff's Complaint and Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A. (Dkt. Nos. 5; 16). Through those decisions, the Court dismissed several of Plaintiff's claims, and allowed only the following claims to proceed to service: (1) Gibson's Eighth Amendment claims against Cuomo, Annucci, Balloni, Cochran, Graff, and McKenzie related to Gibson's exposure to and contraction of COVID-19 (Dkt. No. 10, ¶¶ 12-18); (2) Gibson's First Amendment retaliation claim against Maddox (*Id.*, ¶¶ 19-21); (3) Gibson's excessive force, failure to intervene, and failure to treat injury claims against Prequeen, Szablicki, Price, Seay, Hunter, and Obertean (*Id.*, ¶¶ 22-24); and (4) Gibson's due process claims against Brown and McGuire (*Id.*, ¶¶ 25-32). Plaintiff seeks compensatory and punitive damages against the individual defendants. (*Id.*, ¶ 33). Plaintiff also sought declaratory relief against DOCCS, but the

2

District Court dismissed all claims against DOCCS and any other defendant, in his or her official capacity. (Dkt. No. 16).

Defendant Cuomo previously filed a motion to dismiss Plaintiff's claims against him. (Dkt. No. 28). On March 28, 2023, this Court issued a Report, Recommendation, and Order recommending dismissal of Plaintiff's claims against Defendant Cuomo. (Dkt. No. 74). On June 6, 2023, Judge Sinatra issued a Decision and Order adopting the recommendation and granting Defendant Cuomo's motion to dismiss. (Dkt. No. 83).[1]

On November 30, 2022, Defendants Annucci, Balloni, Cochran, Graff, and McKenzie ("Annucci Defendants") filed a motion to dismiss (Dkt. No. 61). Additionally, on January 31, 2023, Defendants Brown, Hunter, Maddox, McGuire, Obertean, Pequeen, Price, Seay, and Szablicki ("Maddox Defendants") filed a motion to dismiss and motion to sever. (Dkt. No. 67). Each of those motions is addressed herein.

Plaintiff filed a response in opposition to the Annucci Defendants' motion (Dkt. No. 70) and to the Maddox Defendants' motion (Dkt. No. 75). The Annucci Defendants filed a reply (Dkt. No. 78), as did the Maddox Defendants (Dkt. No. 80). Upon the conclusion of briefing, the Court considered the matter submitted for report and recommendation.

## DISCUSSION

A defendant may move to dismiss a complaint on the ground that it fails to state a claim on which relief can be granted. See Fed. R. Civ. P. 12(b)(6). To state a claim on which relief can be granted, a complaint must contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). In reviewing a complaint in the context of a motion to dismiss pursuant to Fed. R.

---

[1] Judge Sinatra's decision also denied a motion for sanctions brought by Plaintiff. (See Dkt. Nos. 43; 74; 83).

3

Civ. P. 12(b)(6), the court must accept as true all factual allegations and draw all reasonable inferences from those allegations in favor of the plaintiff. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Specifically, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Supreme Court has further instructed that "[d]etermining whether a complaint states a plausible claim for relief [...] requires the [...] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

Where, as here, the plaintiff is proceeding *pro se*, the complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'") (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). That said, even a *pro se* complaint must be dismissed if it does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

4

## *Motion to Dismiss First Cause of Action*

Defendants Annucci, Balloni, Cochran, Graff, and McKenzie move for dismissal of Plaintiff's First Cause of Action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants also seek dismissal on the basis of qualified immunity. For the following reasons, the Court recommends that the motion to dismiss be granted.

a. *Eighth Amendment Claims*

Plaintiff alleges that former Governor Cuomo and the moving Annucci Defendants violated her Eighth Amendment rights by mismanaging "preventative measures to prevent the exposure to, contraction of, and spread of [COVID-19]" among prisoners in the custody of DOCCS. (Dkt. No. 10, ¶ 12).[2]

For the reasons stated in this Court's prior Report, Recommendation, and Order, the Court finds that Plaintiff's complaint fails to state a claim against the remaining Defendants named in this cause of action. (*See* Dkt. No. 74). As the Court previously found, Plaintiff has failed to allege that Governor Cuomo acted with deliberate indifference in failing to implement certain policies, procedures, or safety measures to address the risks of COVID-19 at Wende Correctional Facility in March 2020. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994) (holding that a defendant must have acted with "deliberate indifference to a substantial risk of serious harm" to be held liable on an Eighth

---

[2] For a fuller discussion of the facts supporting Plaintiff's allegations, the Court refers to its Report, Recommendation, and Order issued on March 28, 2023. (Dkt. No. 74).

5

Amendment conditions of confinement claim). The same conclusion is applicable to the moving Defendants.

Plaintiff fails to plausibly allege that DOCCS Commissioner Annucci or Correction Officers Balloni, Cochran, Graff, and McKenzie were actually aware of specific conditions which increased Plaintiff's likelihood of COVID-19 exposure. Nor has Plaintiff alleged that any of the Defendants consciously disregarded such a risk. *See Harper v. Cuomo*, 9:21-CV-19, 2021 U.S. Dist. LEXIS 39173, at *27-28 (E.D.N.Y. Mar. 1, 2021) (explaining that to fulfill the subjective element of deliberate indifference for an Eighth Amendment conditions of confinement claim, a plaintiff must show that the official in question knew of and disregarded an excessive risk to inmate health or safety and acted with a mental state "consistent with recklessness in the criminal law"). At most, Plaintiff has plead facts suggesting negligence on the part of prison officials, which does not constitute deliberate indifference. *See Morgan v. Parmiter*, 9:22-CV-0147, 2022 U.S. Dist. LEXIS 57349, *8 (N.D.N.Y. Mar. 28, 2022) ("Even assuming Defendants' response to COVID-19 was imperfect, or negligent, it is not enough to support a finding of deliberate indifference."); *Harper*, 2021 U.S. Dist. LEXIS 39173, at *31-34 (negligent errors in implementing policies to address evolving information about COVID-19 does not show knowing disregard of serious harm); *Chunn v. Edge*, 465 F. Supp. 3d 168, 204 (E.D.N.Y. 2020) ("it is far more likely that officials have made negligent errors in implementing complex guidelines during a novel crisis than that they have knowingly disregarded an excessive risk of serious harm."); *see also Burrell v. Annucci*, 9:22-CV-7014, 2022 U.S. Dist. LEXIS 178301, at *15-16 (N.D.N.Y. Sept. 30, 2022) (collecting cases) ("with respect to prisoner claims involving COVID-19, the allegation that defendants disregarded public policy, the violation

of a state rule, regulation, or statute does not, on its own, give rise to a constitutional claim"). Thus, Plaintiff has not pled a constitutional violation and the Court recommends that Defendants' motion to dismiss be granted.

The Court further finds that Defendants Annucci, Balloni, Cochran, Graff, and McKenzie are entitled to qualified immunity in connection with this claim for the reasons previously stated in the Court's prior Report, Recommendation, and Order. (*See* Dkt. No. 74, pgs. 17-19). In brief, this is because there was "no Second Circuit or other authority addressing the question of whether Eighth Amendment rights are violated by prison conditions that failed to provide specific protections against contracting COVID-19" and, "[i]ndeed, it would be very difficult to demonstrate that any such right was clearly established at the very outset of the pandemic." (*Id.*, pgs. 18-19). Because Plaintiff cannot prove that she had a "clearly established" right that was violated by the conditions of her confinement, Defendants are entitled to qualified immunity on this claim. Thus, for this alternative reason, the Court recommends that the motion to dismiss be granted.

   b. *State Law Claims*

Regarding COVID-19 management and safety, Plaintiff also raises state law claims rooted in theories of negligence and violations of the New York State Constitution. (Dkt. No. 10, ¶¶ 3, 12, 22, 25). The Annucci Defendants seek dismissal of these state law claims on the basis that this Court lacks jurisdiction to adjudicate them.

New York Correction Law § 24 provides that "[n]o civil action shall be brought in any court of the state […] against any officer or employee of [DOCCS] […] in his or her personal capacity, for damages arising out of any act done or the failure to perform any

7

act within the scope of employment and in the discharge of duties by such officer or employee." "The Second Circuit has long[] held that [New York State] Correction Law § 24 precludes a plaintiff from raising state law claims in federal court against state officers in their personal capacities for alleged actions arising within the scope of their employment." *Grubbs v. Ngbobi*, 21-CV-02906, 2022 U.S. Dist. LEXIS 159155, *25-26 (S.D.N.Y. Sept. 2, 2022) (citing *Baker v. Coughlin*, 77 F.3d 12, 16 (2d Cir. 1996)). Instead, Section 24 mandates that state law claims for damages for acts or omissions committed by DOCCS employees within the scope of their employment be brought exclusively in the New York Court of Claims. *See* N.Y. Corr. § 24. Further, the New York State Constitution does not create a private right of action "where…remedies are available under § 1983." *Loving v. Morton*, 20-CV-11135, 2022 U.S. Dist. LEXIS 133777, *8 n.6 (S.D.N.Y. July 27, 2022) (citations omitted); *see also Cromwell v. Hendel*, 20-CV-317, 2022 U.S. Dist. LEXIS 196787, *16 (W.D.N.Y. Oct. 28, 2022) ("[s]ection 1983 need not provide the exact same standard of relief in order to provide an adequate remedy.").

Here, Plaintiff concedes that her state law and state constitutional claims cannot proceed. (Dkt. No. 70, pgs. 7-8). Plaintiff consents to withdraw all state law claims against Defendants Annucci, Balloni, Cochran, Graff, and McKenzie. (*Id.*).[3]

Accordingly, the Court further recommends dismissal of each of Plaintiff's claims against Defendants Annucci, Balloni, Cochran, Graff, and McKenzie which arise under state law.

---

[3] Plaintiff maintains, however, that her claims against these Defendants arising under the United States Constitution are viable in this Court. (Dkt. No. 70, pgs. 8-9).

### ***Motion to Dismiss Second Cause of Action***

Defendant Maddox moves for dismissal of Plaintiff's Second Cause of Action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant also seeks dismissal on the basis of qualified immunity. For the following reasons, the Court recommends that the motion to dismiss be granted.

a. *Failure to State a Claim*

Plaintiff's Second Cause of Action alleges First Amendment retaliation against Plaintiff by Defendant Maddox. (Dkt. No. 10, ¶¶ 19-21). Plaintiff Gibson alleges that, on April 9, 2020, she requested that Maddox, a Corrections Officer at Wende Correctional Facility, place a "prison grievance complaint" in Wende's Inmate Grievance Program Drop Box. (*Id.*). Gibson's grievance complained that Maddox had destroyed a light fixture in her cell. (*Id.*). When handed the grievance, Maddox responded, "Fuck you – you really think I am going to let you send grievances and complaints to people about me out." (*Id.*). Maddox then ripped the grievance in half. (*Id.*). Gibson alleges that Maddox's destruction of the grievance was a "retaliatory act" which "thwarted plaintiff's protected attempt to ascertain a just, speedy, and inexpensive resolution of plaintiff's issue of complaint." (*Id.*).

To prove a First Amendment retaliation claim under Section 1983, a prisoner must show: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). Only "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising [his or her] constitutional rights'" constitutes an "adverse

9

action" for a claim of retaliation. *Lashley v. Wakefield*, 483 F. Supp. 2d 297, 300 (W.D.N.Y. 2007) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004)). "Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003).

It is well established that "retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). Thus, Gibson's conduct in attempting to file a grievance implicates "a protected right of redress under the First and Fourteenth Amendments." *Id.*; *see Woodward v. Afify*, 14-CV-856, 2018 U.S. Dist. LEXIS 169547, *31-32 (W.D.N.Y. Sept. 28, 2018) ("The filing of prison grievances, complaints or lawsuits constitutes protected activity."). Nevertheless, the Second Circuit has instructed district courts to "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id.* (quoting *Davis*, 320 F.3d at 352). From these allegations, it is also clear that Maddox's destruction of the grievance was causally connected to Gibson's attempt to file a grievance against Maddox. *See Espinal*, 558 F.3d at 129 ("A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action.").

However, Maddox argues that destruction of a single grievance does not qualify as an "adverse action" under the law. Indeed, multiple courts in the Second Circuit have determined that a single instance of a guard refusing to file a grievance on behalf of a

10

prisoner is not an adverse action supporting a constitutional claim. *See Grays v. McGrain*, 12-CV-532, 2018 U.S. Dist. LEXIS 103501, *22 (W.D.N.Y. June 19, 2018) ("[Correction Officer's] refusal to file plaintiff's single grievance does not constitute legally cognizable 'adverse action.'"), *adopted by* 333 F. Supp. 3d 225 (W.D.N.Y. 2018); *Crenshaw v. Dondrea*, 278 F. Supp. 3d 667, 670 (W.D.N.Y. 2017) (finding no adverse action in sheriff's deputy's refusal to file a single grievance); *Adams v. Rock*, 12-CV-1400, 2015 U.S. Dist. LEXIS 36283, *5 (N.D.N.Y. Mar. 24, 2015) (allegation that officer refused to process two grievances filed by plaintiff did not constitute adverse action to support a First Amendment retaliation claim); *Hill v. Laird*, 06-CV-0126, 2014 U.S. Dist. LEXIS 43994, *30 (E.D.N.Y. Mar. 31, 2014) ("the refusal to process a small number of grievances does not constitute an adverse action"); *Ross v. Westchester Cnty. Jail*, 10-CV-3937, 2012 U.S. Dist. LEXIS 3502, *21 (S.D.N.Y. Jan. 11, 2012) ("The refusal to file a single grievance is, without more, insufficient to constitute an adverse action. A refusal to file a single grievance is not the kind or retaliatory act which deter a prisoner of 'ordinary firmness' from filing other grievances."); *but see Shariff v. Poole*, 689 F. Supp. 2d 470, 480 (W.D.N.Y. 2010) ("[T]he confiscation and review of [an] unfinished grievance constituted an adverse action.").

Plaintiff relies on *Shariff*, *supra*, *Whipper v. Angell*, 21-CV-1157, 2021 U.S. Dist. LEXIS 222761 (D. Conn. Nov. 18, 2021), and *Fabricio v. Annucci*, 790 Fed. Appx. 308 (2d Cir. 2019), to argue that this single instance of destruction of a grievance did constitute adverse action against her. However, the unpublished decision of the Second Circuit in *Fabricio* is readily distinguishable from the facts presented here. There, a correction officer warned Fabricio that he would have to "deal with the consequences" if he filed a grievance about the officer's alleged use of force. *See* 790 Fed. Appx. at 311. After

11

Fabricio did so, the officer referenced the grievance, told Fabricio he was "on hold," and did not allow him to go to the gym. *Id.* While acknowledging it to be a "close[] call," the Second Circuit construed the resulting denial of recreation time for Fabricio to be "adverse action" sufficient to support a claim of retaliation at the pleading stage. *Id.*

*Whipper* is similarly distinguishable. There, the plaintiff alleged that an officer filed a false disciplinary charge against him after she became aware that the inmate was going to file a grievance regarding her conduct. *See* 2021 U.S. Dist. LEXIS 222761, at *8-9. The court allowed the case to go forward after initial review based on the allegation that the officer sought to obstruct the inmate's right to file a grievance by issuing false disciplinary charges against him. *Id.* In this case, there are no allegations of false disciplinary charges arising from Plaintiff's attempt to file a grievance. Nor does Plaintiff allege any other retaliatory action beyond destruction of the initial grievance.

Further, although the district court in *Shariff* opined that a correction officer's confiscation and review of an unfinished grievance constituted an adverse action, there was a complex pattern of retaliatory conduct alleged in that case. *See* 689 F. Supp. at 479-83. There, plaintiff was a member of an inmate liaison committee working to address with prison administration issues of officer brutality against inmates. *Id.* After plaintiff wrote a letter of complaint to the prison commissioner, a series of retaliatory actions occurred. *Id.* Two officers confiscated a grievance while plaintiff was typing it. *Id.* One of the officers then wrote a misbehavior report against plaintiff. *Id.* Subsequently, another officer made threatening remarks to plaintiff about the raising of inmate issues, and a second misbehavior report was issued. *Id.* Lastly, plaintiff's cell was searched and "trashed"

repeatedly. *Id.* By comparison, there is no similar circumstance or pattern of retaliatory behavior alleged in the present case.

In addition to numerous district court cases finding that single-instance interference with filing of a prison grievance is not adverse action, the Court also finds the Second Circuit decision in *Hayes v. Dahlke* to be analogous in its denial of a similar claim. *See* 976 F.3d 259 (2d Cir. 2020). In *Hayes*, plaintiff alleged that a correction officer told him that "maybe all of this would go away" if he stopped filing grievances. The same officer also refused to file plaintiff's grievance against the prison superintendent for one month. 976 F.3d at 274. The Court explained, "[w]hile we have held that a prison official's repeated interference with an inmate's efforts to file grievances might necessitate 'efforts beyond what is reasonably expected of an inmate with ordinary firmness,' we decline to find that the month-long delay in filing one grievance alleged here rises to the level of a constitutional violation."

Accordingly, the Court finds that Maddox's destruction of a single grievance under these circumstances would not deter a person of ordinary firmness from exercising her constitutional rights. Instead, the Court concludes that these alleged actions were *de minimis* and do not constitute an "adverse action" necessary to state a First Amendment retaliation claim.[4]

---

[4] Additionally, although the "individual of ordinary firmness" inquiry is an objective analysis, several courts have noted, after finding no adverse action, that the inmate was not deterred by the alleged retaliatory conduct. *See, e.g., Hayes*, 976 F.3d at 274 ("it bears noting that [the officer's] statements clearly did not prevent Hayes from filing additional grievances"); *Grays*, 2018 U.S. Dist. LEXIS 103501,at *22-23 (opining that the Court's "no adverse action" conclusion was substantiated by the fact that plaintiff was not deterred in pressing forward his claims against the officers by writing to the superintendent and others and filing suit against the officers); *Crenshaw*, 278 F. Supp. 3d at 670 n.2 ("Although the 'person of ordinary firmness' inquiry is to be decided under an objective, rather than subjective standard, it is also worth noting that plaintiff, who is no stranger to the prison grievance system or the judicial system […],

Nor has Plaintiff stated a viable claim with her allegation that destruction of the grievance deprived her of "a just, speedy, and inexpensive resolution" of her issue of complaint, i.e., a broken light in her cell. This allegation is rooted in denial of investigation into or resolution of a prisoner complaint, which does not constitute an "adverse action." *See Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 281 (N.D.N.Y. 2018) ("Courts have held that 'failure to investigate a complaint cannot be considered an adverse . . . action taken in retaliation for the filing of that same complaint' because it 'will not ordinarily constitute a threat of further harm[.]'") (citing *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721-22 n. 8 (2d Cir. 2010); *Islam v. Goord*, No. 05-CV-7502, 2006 U.S. Dist. LEXIS 71853, *18 (S.D.N.Y. Sept. 29, 2006) (holding that the failure to adequately investigate complaints is "qualitatively different in kind from the types of harms that courts in this circuit have typically considered significant enough to constitute 'adverse actions'"); *see also Crenshaw*, 278 F. Supp. 3d at 670 ("interference with an inmate's attempt to file a grievance will not give rise to a constitutional claim" under this theory, "absent a showing that the defendants' actions in that regard resulted in actual prejudice to the inmate's pursuit of a legal action."). Furthermore, Plaintiff has not alleged that she made attempts to pursue, or was prevented from pursuing, other options to remedy her complaint, such as speaking with a supervisory official or refiling her grievance.[5]

---

was in no way dissuaded or deterred by [the deputy's] actions from filing further grievances."). Here, the record of this case demonstrates that plaintiff was not deterred from pursuing any administrative or legal remedies. In addition to bringing this action, plaintiff's complaint also reflects that she continued to pursue administrative remedies with respect to a separate due process claim even after this grievance was destroyed. (*See* Dkt. No. 10, ¶ 31).

[5] Additionally, to the extent Plaintiff suggests that she was denied legal relief for the underlying grievance regarding destruction of a light fixture in her cell, she fails to state a valid conditions-of-confinement claim. As other judges have noted, "federal courts are not the forums to determine proper lighting [] in jails." *Ouchie v. Ross*, 07-CV-91, 2013 U.S. Dist. LEXIS 21197, *29-30 (W.D.N.Y. Feb. 15, 2013) (citations omitted).

Thus, the Court concludes that Plaintiff's retaliation claim against Defendant Maddox should be dismissed for failure to state a claim.

b. *Qualified Immunity*

The Court further finds that Defendant Maddox is entitled to qualified immunity in connection with this claim. The doctrine of qualified immunity protects government officials from suit if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The issues on qualified immunity are: (1) whether plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that right was "clearly established"; and (3) even if the right was "clearly established," whether it was "objectively reasonable" for the officer to believe the conduct at issue was lawful. *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013).

To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In this way, qualified immunity shields official conduct that is "objectively reasonable in light of the legal rules that were clearly established at the time it was taken." *Gonzalez*, 728 F.3d at 154 (quoting *X-Men Sec., Inc., v. Pataki*, 196 F.3d 56, 66 (2d Cir. 1999)). Courts must consider: "whether (1) [the right] was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of that right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011). Such a determination must be viewed in light of the specific context of the case, not a broad general proposition. *Id.*

Here, Defendant Maddox is entitled to qualified immunity because Plaintiff has not alleged facts showing that a constitutional violation occurred. Moreover, even if she had, Plaintiff cannot show that she had a "clearly established" right that was violated by the alleged retaliatory conduct. While the "clearly established" standard does not necessarily require a controlling decision on point, it does require that either "'controlling authority' or 'a robust consensus of cases of persuasive authority' dictate the action at issue." *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 186 (2d Cir. 2020) (citations omitted). If such precedent does not exist, "the right at issue was not clearly established […] [and] qualified immunity shields the defendant." *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007).

In its initial screening order, the District Court acknowledged that, "[w]hether ripping up the grievance, alone, is an adverse action is not [] clear." (Dkt. No. 5, pg. 21). As discussed above, most courts have determined that no viable claims exist under similar circumstances, but limited caselaw does exist to support Plaintiff's position that a single instance of destruction of a grievance could amount to "adverse action." Even if this Court were to find a viable claim here, the presence of conflicting caselaw demonstrates that judges could disagree on this issue. As such, a constitutional right is far from clearly established, and it would be objectively reasonable for an officer to believe the conduct at issue was lawful. *See Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 959 (2d Cir. 2015) (granting qualified immunity defense where the applicable law made clear that "it was not only officers of reasonable competence, but federal judges, who could so disagree."); *see also Richardson v. Selsky*, 5 F.3d 616, 623 (2d Cir. 1993) ("If the district judges in the Southern District of New York, who are charged with ascertaining

and applying the law, could not determine the state of the law with reasonable certainty, it seems unwarranted to hold prison officials to a standard that was not even clear to the judges [...]."); *Akinnagbe v. City of New York*, 128 F Supp. 3d 539, 552 n.9 (E.D.N.Y. 2015) ("Although a District Court holding cannot define a right as 'clearly established' for purposes of qualified immunity, a District Court's rejection of a right of action under given circumstances certainly suggests that there is no clearly established right being violated.").

To this point, Plaintiff provides no Second Circuit or other controlling authority resolving the specific question of whether a single act of interference with an inmate's attempt to file a grievance regarding a broken light constitutes a retaliatory act of constitutional significance. Thus, Plaintiff has not shown that a reasonable person in Maddox's position would have known that destruction of a grievance would be a violation of Plaintiff's constitutional rights. Because Plaintiff has not plausibly alleged that Maddox violated a clearly established right, Maddox is entitled to qualified immunity.

Thus, for this alternative reason, the Court recommends that Defendant Maddox's motion to dismiss be granted.

### *Motion for Severance*

Defendants Maddox, Obertean, Hunter, Pequeen, Szarlicki, Price, Seay, Brown, and McGuire seek severance of Plaintiff's Second Cause of Action from her Third and Fourth Causes of Action, as well as from all other causes of action, pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure.

Rule 20 provides for permissive joinder of defendants in one action where "(a) any right to relief is asserted against them jointly, severally, or in the alternative with respect

to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (b) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Where a party is misjoined in an action, Rule 21 allows the court to, "on just terms, add or drop a party," or "sever any claim against a party." See Fed. R. Civ. P. 21.

In light of the Court's recommendation for dismissal of Plaintiff's First and Second Causes of Action, the Court does not find it necessary to reach Defendant's motion for severance. If the District Court elects to adopt these recommendations, Plaintiff's Third and Fourth Causes of Action will be the only remaining claims in this action. Those claims allege use of excessive force against Plaintiff, medical indifference in treating Plaintiff's alleged injuries, and violations of due process in the prison disciplinary proceeding which allegedly resulted from the use of force incident. (Dkt. No. 10, ¶¶ 22-32).[6]

In fact, defendants Maddox, Obertean, Hunter, Pequeen, Szarlicki, Price, Seay, Brown, and McGuire agree that to the extent the Court finds that dismissal of Plaintiff's First and Second Causes of Action is warranted, "there is no need to determine whether Plaintiff inappropriately joined the several claims." (Dkt. No. 80, pg. 4). The Defendants further acknowledge that the logical relationship between Plaintiff's excessive force, medical indifference, and due process claims arise out of the same transaction and may be properly resolved in one lawsuit. (Id.). The Court finds that these claims both arise out of the same occurrence, or series of occurrences, and will share questions of law or fact

---

[6] Although Plaintiff's pleading is somewhat vague, she has clarified the connection between her third and fourth causes of action in her opposition memorandum. (Dkt. No. 75, pg. 12). She states that, following the use of force incident, "in an attempt to justify and dissemble the physical attack on plaintiff, defendant Szablicki issued a [] misbehavior report purporting falsely that plaintiff assaulted staff." (Id.). Plaintiff goes on to explain that she was deprived of due process in the resulting disciplinary proceeding.

common to all remaining Defendants. Thus, joinder of these Defendants in a single action is appropriate under the Federal Rules.

In sum, the Court recommends that Plaintiff's First Cause of Action against Annucci, Balloni, Cochran, Graff, and McKenzie based on conditions of confinement related to COVID-19 be dismissed in its entirety. The Court further recommends that Plaintiff's Second Cause of Action against Maddox based on retaliation for filing of a grievance be dismissed in its entirety. Plaintiff's remaining Third and Fourth Causes of Action against Defendants Pequeen, Szablicki, Price, Seay, Hunter, Obertean, Brown, and McGuire based on excessive force, failure to protect, medical indifference, and violations of due process, for which dismissal has not been sought, should continue to discovery.

## **CONCLUSION**

For the foregoing reasons, it is recommended to the District Court that the Annucci Defendants' motion to dismiss (Dkt. No. 61) and Defendant Maddox's motion to dismiss (Dkt. No. 67) each be granted. It is further recommended that Defendants Maddox, Obertean, Hunter, Pequeen, Szarlicki, Price, Seay, Brown, and McGuire's motion for severance be denied as moot.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a),

and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED.**

DATED:  August 22, 2023
        Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge